# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.
Attorney for Joanne Cipolla-Dennis
308 North Tioga St., Second Floor
Ithaca, New York 14850
607.269.1300; 607.269.1301 fax
ekopko@ithaca.law

|  |  |
|---|---|
| JOANNE CIPOLLA-DENNIS,<br><br>            Plaintiff,<br><br>vs.<br><br>COUNTY OF TOMPKINS, MICHAEL LANE, RICH JOHN, PETER STEIN, MARTHA ROBERTSON and JAMES DENNIS, individually and as Members of the Legislature,<br>            Defendants. | Docket No.   3:18-CV-1241 (TJM/DEP)<br><br>JURY TRIAL DEMANDED |

---

## COMPLAINT

---

Plaintiff Joanne Cipolla-Dennis (Cipolla-Dennis) by her attorney, Edward E. Kopko, Esq., brings her complaint against the County of Tompkins (Tompkins), and Michael Lane (Lane), Rich John (John), Peter Stein (Stein), Martha Robertson (Robertson), and James Dennis (Dennis) both in their individual and official capacity (collectively "Defendants"), and alleges as follows:

1

**INTRODUCTION**

1. This is an action for injunctive relief and monetary damages arising from the application of the published policy (Policy) of the Tompkins County Legislature (Legislature) against Cipolla-Dennis, as embodied in "Rules for Speaking under Privilege of the Floor":

---

TOMPKINS COUNTY LEGISLATURE

(Please complete this form and submit to Clerk of the Legislature if you wish to speak at this meeting.)

Please Note: Three-Minute Time Limit

Rules for Speaking under Privilege of the Floor

1.     I agree to a three-minute time limit;
2.     I agree not to raise my voice;
3.     I agree not to use lewd, obscene, profane, slanderous or libelous language or speak or act in a manner that would tend to incite a breach of the peace;
4.     I agree not to speak about County personnel matters. Personnel matters include comments about the job performance of named County employees, other than elected officials;
5.     After three minutes I agree to leave the microphone and yield the floor;
6.     I agree that if I cause a disruption and am asked to leave, I will leave the Chambers.

Name (please print): _____

Municipality of Residence: _____

Representing (organization, etc.): _____ Topic: _____

_____
Signature

<u>Written materials may be submitted to the Clerk of the Legislature.</u>

---

2. The Legislature has adopted the Policy and requires any citizen seeking to address the Legislature or its Committees to sign and obey the Policy before addressing the Legislature or a Committee of the Legislature.

3. The Policy, ¶ 2, "I agree not to raise my voice" is an unconstitutional prior restraint.

4. The Policy, ¶ 3, "I agree not to use lewd, obscene, profane, slanderous or libelous language or speak or act in a manner that would tend to incite a breach of the peace," is an unconstitutional prior restraint.

5. The Policy, ¶ 4, "I agree not to speak about County personnel matters. Personnel matters include comments about the job performance of named County employees, other than elected officials" is an unconstitutional prior restraint.

   a. The Legislature lacks standing to preclude public discussion about "County personnel matters" and "comments about the job performance of named County employees."

6.  The Policy, ¶ 6, "I agree that if I cause a disruption and am asked to leave, I will leave the Chambers," is an unconstitutional prior restraint.

7.  The Policy form requires the speaker to sign their name in violation of the Open Meetings Law and is an unconstitutional prior restraint.

8.  Pursuant to 42 U.S.C. § 1983, Cipolla-Dennis brings her action for violation of her rights under the First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment.

## JURISDICTION AND VENUE

9.  Cipolla-Dennis' action arises under the First and Fourteenth Amendments to the Constitution of the United States.

10. The Court has subject matter jurisdiction over the causes of action in this Complaint pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

11. The events giving rise to Cipolla-Dennis' complaint occurred in Tompkins County, located in the Northern District of New York, and venue is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

12. Plaintiff, Joanne Cipolla-Dennis, is, and at all times relevant to her lawsuit has been, a citizen of the United States and a resident of Tompkins County, New York.

13. Before the events giving rise to her lawsuit, Cipolla-Dennis was a regular attendee at and participant in Tompkins County Legislature public meetings.

14. Tompkins County is a political subdivision organized and existing under the laws of New York.

15. Tompkins County acts by and through the Tompkins County Legislature of Representatives ("Legislature").

16. The Legislature is the legislative body of Tompkins County in charge of setting policy for County government and adopting local laws for the County, among other things.

17. Michael Lane (Lane) is an adult, and elected member of the Legislature and is individually responsible for implementing and enforcing the Policy against Cipolla-Dennis in violation of the First Amendment.

18. At all times relevant to the allegations in this complaint, Lane was an authorized agent of the Legislature, acting within the scope of his membership in the Legislature, and with the knowledge and consent of the Legislature.

19. Rich John (John) is an adult, and elected member of the Legislature and is individually responsible for implementing and enforcing the Policy against Cipolla-Dennis in violation of the First Amendment.

20. At all times relevant to the allegations in this complaint, John was an authorized agent of the Legislature, acting within the scope of his membership in the Legislature, and with the knowledge and consent of the Legislature.

21. Defendant Peter Stein (Stein) is an adult, and elected member of the Legislature and is individually responsible for implementing and enforcing the Policy against Cipolla-Dennis in violation of the First Amendment.

22. At all times relevant to the allegations in this complaint, Stein was an authorized agent of the Legislature, acting within the scope of his

membership in the Legislature, and with the knowledge and consent of the Legislature.

23. Defendant Martha Robertson (Robertson) is an adult, and elected member of the Legislature and is individually responsible for implementing and enforcing the Policy against Cipolla-Dennis in violation of the First Amendment.

24. At all times relevant to the allegations in this complaint, Robertson was an authorized agent of the Legislature, acting within the scope of her membership in the Legislature, and with the knowledge and consent of the Legislature.

25. Defendant James Dennis (Dennis) is an adult, and elected member of the Legislature and is individually responsible for implementing and enforcing the Policy against Cipolla-Dennis in violation of the First Amendment.

26. At all times relevant to the allegations in this complaint, Dennis was an authorized agent of the Legislature, acting within the scope of his

membership in the Legislature, and with the knowledge and consent of the Legislature.

**FACTS**

**Background allegations related to the adoption and implementation of Policy**

27. Cipolla-Dennis is an active and concerned citizen and resident of the County who frequently attends and actively participates in public meetings held by the Legislature.

28. Cipolla-Dennis is a lesbian.

29. These public meetings are usually held after regular business hours on public grounds and are open to all residents and employees of the County.

30. These meetings serve as a public forum where the Legislature reports to County residents and where attending citizens are able to voice their concerns and opinions about the state of the County, the workings of the Legislature, and the manner in which the Legislature is administering and handling the County's business.

31. The Legislature abuses power during public meetings, in the normal course of the public comment segment, by disallowing people to freely speak their grievances directly to elected officials without the threat of arrest.

32. On January 13, 2014, during a meeting of the Tompkins County Public Safety committee, Cipolla-Dennis told the Committee that the case of *Amy Crockford v. The City of Ithaca* had been settled wherein Crockford, a gay female, alleged that Ithaca City Police Officer, Stephen Moracco (now a Tompkins County Deputy Sheriff), wrongfully arrested and assaulted Crockford in his patrol vehicle with erratic and dangerous driving as he transported her to the Ithaca City Police Station.

33. In this meeting, Legislature Member Brian Roberson (Roberson), the chair of the Committee, allowed Cipolla-Dennis to speak about Officer Moracco until two women entered the room.

34. At that point, Roberson directed Cipolla-Dennis to "stop speaking."

35. Then, Tompkins County Sheriff Ken Lansing (Lansing) said that he would discuss the matter with Cipolla-Dennis in private.

36. On January 15, 2014 at the Unitarian Church in Ithaca, Cipolla-Dennis met with Sheriff Lansing, and Lansing stated he was not going to take any employment or disciplinary action against his subordinate, Deputy Moracco.

37. As a gay person, Cipolla-Dennis felt that the discriminatory acts of Deputy Moracco against another gay person were a matter of public concern that she would address with the Legislature.

38. On January 21, 2014, Cipolla-Dennis and several others spoke at public comment before the Legislature about concerns related to Deputy Moracco.

39. At that meeting, people spoke freely both in support of Office Moracco and with concerns about his service.

40. Additionally, minutes of that meeting included the comments verbatim including reference to Moracco by name.

41. At the February 6, 2014 Board meeting, Cipolla-Dennis asked to have the records corrected related to Cipolla-Dennis's comments to include a reference to Deputy Moracco.

42. Cipolla-Dennis was not stopped from asking this and was not told to refrain from using Moracco's name by any Legislature member.

43. At the February 18, 2014 Legislature meeting, Cipolla-Dennis spoke again about concerns related to Moracco's service, Lane repeatedly interrupted her during her statement which was a prepared statement by the LGBTQ Action Team of the First Unitarian Society of Ithaca.

44. Cipolla-Dennis politely insisted on completing her statement and did so.

45. Ryan Losinger, a gay man, read a statement prepared by Amy Crockford because Amy was ill and could not read it herself.

46. Losinger was also repeatedly interrupted by Lane.

47. Heather Bretz, a lesbian, recounted to the Legislature witnessing the actions of police officer Moracco as, "overly aggressive and abusive to a woman merely standing on the sidewalk alone not acting as a threat."

48. Lane did not interrupt Bretz during her statement even though she was referencing the same events as Losinger and Cipolla-Dennis referenced.

49. Lane was particularly interested in stopping Losinger and Cipolla-Dennis from speaking while he allowed others to speak freely.

50. Lane's stance was baffling to Cipolla-Dennis as to why Lane was limiting comments concerning something that was part of public record, as all of this information had been published in the local newspapers.

51. This series of events began more than three years of systematic discrimination as the Legislature began to create rules and procedures to silence Cipolla-Dennis at public meetings.

52. On March 25, 2014, the Government Operations Committee held a meeting that discussed various options Committee members considered as rules for Privilege of the Floor by the Public.

53. The Committee agreed to have a small working group get together to discuss the issues raised and bring it back to the Committee.

54. Committee member Dooley Kiefer (Kiefer) suggested adding language to the Rules of the Legislature that requires people to sign up to speak.

55. On May 27, 2014, the Government Operations Committee adopted a motion to direct the County Attorney to draft language for modifying the sign-up form for Privilege of the Floor relating to the discussion of personnel matters.

56. On June 24, 2014, the Government Operations Committee adopted a revised document entitled "Rules for Speaking under Privilege of the Floor" in the Rules of the Legislature.

57. At the July 1, 2014 Legislature meeting, Lane read the new rules for Privilege of the Floor, the Policy, as quoted above, for the first time and stated that the Legislature had adopted the new rules.

**Allegations regarding violation of First Amendment**

58. On May 18, 2017, at a public County Public Safety Committee meeting, Cipolla-Dennis refused to follow the Legislature Policy by refusing to fill out and sign her name to the "blue card" which was the Policy form adopted by the Legislature, referred to above.

59. Acting pursuant to the Policy, the Chairperson of the County Public Safety Committee, John, told Cipolla-Dennis that she could not speak unless Cipolla-Dennis followed the Legislature Policy.

60. Cipolla-Dennis read the statement anyway and John and several other Legislators attempted to stop Cipolla-Dennis.

61. Cipolla-Dennis did not stop reading the statement and John adjourned the meeting and called the sheriff's department to have Cipolla-Dennis arrested.

62. Cipolla-Dennis finished her statement and left the chamber before any member of the sheriff department arrived and before Cipolla-Dennis could be arrested.

63. The minutes of the meeting state, "A member of the public wished to speak but was not granted permission due to refusing to follow the Legislature rules for members of the public speaking under Privilege of the Floor. Following a request that the individual leave Chambers, it was MOVED by Mr. John, seconded by Mr. Stein, and unanimously

adopted by voice vote, to enter into recess at 3:38 p.m. The meeting reconvened at 3:42 p.m."

64. By adjourning the meeting because of Cipolla-Dennis's refusal to follow the Policy, John, Stein, and the other members of the Legislature, by voting in favor of the adjournment, deprived Cipolla-Dennis of the opportunity to address the government body, in violation of her First Amendment right.

65. During Cipolla-Dennis's comments, Cipolla-Dennis did not violate any of the established rules except for not giving her name—yet, everyone in the room knew Cipolla-Dennis by name as she is well known to everyone present due to her regular attendance and participation in Legislature meetings.

66. The threat of arrest and prosecution for exercising her First Amendment rights has so chilled Cipolla-Dennis that she is afraid to speak before the Legislature.

67. Approximately two to three weeks later, Robertson came to Cipolla-Dennis' home uninvited, ostensibly to deliver materials to Cipolla-Dennis' wife.

68. Cipolla-Dennis asked Robertson why she turned her back on her at the May 18, 2017 meeting.

69. At the May 18, 2017 meeting three men badgered Cipolla-Dennis, and Cipolla-Dennis twice asked Robertson to intervene on her behalf to stop the three men from badgering her.

70. Instead of intervening on Cipolla-Dennis' behalf, Robertson, who purports to champion the rights of women and homosexuals, failed to intervene at all and instead literally turned her back on Cipolla-Dennis and walked away from her.

71. Cipolla-Dennis confronted Robertson about her failure to intervene and, instead of replying in any meaningful way, Robertson replied that Cipolla-Dennis had violated the meeting rules by referring to a member of the Tompkins County Sheriff's Department, a Captain Bunce.

72. In fact, and the record confirms it, Cipolla-Dennis did not make any reference to Captain Bunce at the May 18, 2017 meeting, and Cipolla-Dennis explained that to Robertson.

73. Robertson disregarded and ignored Cipolla-Dennis, indeed turned her back on Cipolla-Dennis again, and instead stated "The legislature can make any rules we want according to the county attorney.  If you want things changed, Joanne, then you'll have to sue the county."

74. Cipolla-Dennis told Robertson to leave her house and never come back.

75. This incident caused significant emotional distress to Cipolla-Dennis, including, but not limited to, exacerbating her depression and causing severe anxiety.

76. By way of example, Cipolla-Dennis was so upset by Robertson's cavalier, callous, and hypocritical manner that Cipolla-Dennis posted a sign on her property to ward strangers from coming on to her property.

## COUNT I (42 U.S.C. § 1983)

## FIRST AMENDMENT VIOLATIONS

77. Cipolla-Dennis hereby incorporates the allegations of the preceding paragraphs.

78. Exercising her constitutionally protected right of free speech, Cipolla-Dennis has spoken out and attempted to speak out at public Legislature meetings on various matters of public concern, including but not limited to the policy and practices of hiring and maintaining the employment of a deputy sheriff known to have assaulted and battered a gay person.

79. Defendants have used their offices to retaliate against Cipolla-Dennis for exercising her constitutionally protected right of free speech to criticize and express opposition to the Legislature's adoption of the Policy.

80. Defendants silenced, censured, harassed, threaten and intimidated Cipolla-Dennis during her speaking turn at Legislature meetings and

attempted to arrest her, all in retaliation against Cipolla-Dennis and to prevent her from speaking out about matters of public concern.

81. Defendants, acting under color of state law, have used threats and intimidation to prevent Cipolla-Dennis from speaking at public meetings on matters of public concern and to chill Ms. Cipolla-Dennis's speech.

82. All of the overt acts of the Defendants and individuals listed therein were undertaken willfully and maliciously and have been committed for the express purpose and mutual understanding to punish and deprive Plaintiff of her First Amendment rights.

83. All Defendants were aware of Ms. Cipolla-Dennis' s First Amendment rights and that she was exercising her rights validly.

84. The malicious and retaliatory acts by Defendants have resulted in extreme humiliation and embarrassment to Plaintiff, as well as emotional pain and suffering.

## COUNT II (42 U.S.C. § 1983)

## CONSPIRACY

85. Cipolla-Dennis hereby incorporates the allegations of preceding paragraphs.

86. On May 18, 2017, John, Stein, and other members of the County Legislature sitting as the County's Public Safety Committee, and acting pursuant to the Policy acted together and in concert to adjourn the public meeting to deprive Cipolla-Dennis of a public forum to address and present grievances to the Legislature and acted together under color of state law to keep Cipolla-Dennis from expressing her views to the Committee in public meetings.

87. The overt acts described in her complaint have been undertaken by Defendants willfully, maliciously, and knowingly in furtherance of the conspiracy.

88. Defendants have conspired to harass, maliciously ridicule, threaten, and censure Cipolla-Dennis, and to retaliate against her to keep her from speaking out against County policies in public meetings.

89. Defendants knowingly and intentionally have acted in unison to violate Cipolla-Dennis' free speech rights.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Cipolla-Dennis prays that the Court:

A. Declare that the Legislature Policy, practices and acts complained of are illegal and unconstitutional;

B. Permanently enjoin the Defendants from enforcing the Policy;

C. Permanently enjoin Defendants from intimidating, threatening and preventing Cipolla-Dennis from attending and speaking at County Legislature meetings and exercising her First Amendment rights;

D. Award compensatory damages from all Defendants in an amount to be determined at trial;

E. Award punitive damages from Defendant Lane in an amount to be determined at trial;

F. Award punitive damages from Defendant John in an amount to be determined at trial;

G. Award punitive damages from Defendant Stein in an amount to
   be determined at trial;

H. Award punitive damages from Defendant Robertson in an
   amount to be determined at trial;

I. Award reasonable attorney's fees, costs, and expenses, pursuant
   to 42 U.S.C. § 1988; and

J. Award such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff, Joanne Cipolla-Dennis hereby demands a trial by jury on all
issues so triable.

Edward E. Kopko
Edward E. Kopko, Lawyer, P.C., Attorney for Plaintiff
Bar Roll No. 510874
308 N. Tioga Street, Second Floor
Ithaca, New York 14850
607.269.1300; Fax 607.269.1301
ekopko@ithaca.law
Wednesday, October 17, 2018