**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
—————————————————————————————

**JOANNE CIPOLLA-DENNIS,**

                    **Plaintiff,**

      **vs.**                                      **3:18-CV-1241**

**COUNTY OF TOMPKINS, MICHAEL LANE,**
**RICH JOHN, PETER STEIN, MARTHA ROBERTSON**
**and JAMES DENNIS, individually and as Members**
**of the Legislature,**

                    **Defendants.**
—————————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

## I.    INTRODUCTION

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 asserting that

Defendants violated her rights under the First Amendment to the United States Constitution.

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint. Dkt. No. 6.

Plaintiff responds with a cross-motion seeking partial summary judgment and a preliminary

injunction enjoining Defendants from enforcing its "Rules for Speaking under Privilege of the

Floor." Dkt. No. 13. Defendants oppose the cross-motion. Dkt. No. 15. For the reasons

that follow, Defendants' motion in granted in part and denied in part, and Plaintiff's motions

are denied.

1

## II.    BACKGROUND

### a. Procedural

Plaintiff commenced this action on October 18, 2018 asserting that Defendants retaliated against her because she spoke out about matters of public concern at County legislative meetings, used threats and intimidation to prevent her from speaking about matters of public concern at public meetings, and the individual defendants conspired with each other to censure her and retaliate against her because of her public speech.  *See generally* Compl. Dkt. No. 1.  Plaintiff seeks injunctive relief and monetary damages "arising from the application of the published policy (Policy) of the Tompkins County Legislature (Legislature) against Cipolla-Dennis, as embodied in 'Rules for Speaking under Privilege of the Floor.'" *Id.*, at ¶ 1.  After the Hon. David E. Peebles, United States Magistrate Judge, directed Plaintiff's counsel to either file proof of service of the summonses or a status report on or before January 4, 2019, *see* 12/27/18 Text Order, Dkt. No. 4, Plaintiff filed a certificate of service on January 2, 2019.  Dkt. No. 5.  In lieu of an Answer, Defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the action.  Dkt. No. 6.  The Court then granted Plaintiff's request to adjourn the return date of the motion to afford an extension of time in which to respond. *See* Dkt. Nos. 10, 11, 12.   In response to the motion, Plaintiff cross-moved for partial summary judgment and a preliminary injunction preventing Defendants from enforcing its Rules for Speaking under Privilege of the Floor.  Dkt. No. 13. Defendants opposed the cross-motion by arguing that the motion for summary judgment is premature, and that Defendants' motion to dismiss should be granted thereby closing this case. Dkt. No. 15.  These motions are now before the Court.

2

### b. Factual

For the purposes of the Rule 12(b)(6) motion, the following factual allegations taken from the Complaint are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011). From 2014 until May 18, 2017, Plaintiff was a regular attendee at, and participant in, public meetings of the Tompkins County Legislature of Representatives ("Legislature"). Compl. ¶¶ 12, 27. These public meetings are usually held after regular business hours on public grounds and are open to all residents and employees of Tompkins County ("County"). *Id.* ¶ 29.

On January 13, 2014, during a meeting of the County Public Safety Committee, Cipolla-Dennis began speaking about a civil lawsuit brought against the City of Ithaca based upon the conduct of a former Ithaca City Police Officer, Stephen Moracco. *Id.* 32. The reason for addressing the County Public Safety Committee about Moracco was because, at the time, Moracco was a Tompkins County Deputy Sheriff. *Id.* Plaintiff stated that Moracco had previously been involved in a lawsuit in which a gay female alleged that Moracco wrongfully arrested her and "assaulted [her] in his patrol vehicle with erratic and dangerous driving as he transported her to the Ithaca City Police Station." *Id.* During Plaintiff's statement, the Chair of the County Public Safety Committee, non-defendant Brian Roberson, directed Plaintiff to stop speaking when two women entered the room. *Id.* ¶¶ 33-35. The County Sheriff, non-defendant Ken Lansing, then came up to Plaintiff and told her that he would discuss with her in private matters involving Moracco. *Id.* ¶ 36. When Lansing spoke with Plaintiff on January 15, 2014, he told Plaintiff he was not going to take any employment or disciplinary action against Moracco. *Id.* Plaintiff, "[a]s a gay person, . . .

felt that the discriminatory acts of Deputy Moracco against another gay person were a matter of public concern that she would address with the Legislature." *Id.* ¶ 37.

On January 21, 2014, Cipolla-Dennis and several others "spoke at public comment before the Legislature about concerns related to Deputy Moracco." *Id.* ¶ 38. "At the February 6, 2014 Board meeting,[1] Cipolla-Dennis asked to have the records corrected related to Cipolla-Dennis's comments to include a reference to Deputy Moracco." *Id.* ¶ 41. At the February 18, 2014 Legislature meeting, Cipolla-Dennis spoke again about concerns related to Moracco's service, and read a statement prepared by the LGBTQ Action Team of the First Unitarian Society of Ithaca. *Id.* ¶¶ 43-44. While she was reading the statement, Defendant Michael Lane repeatedly interrupted Plaintiff but Plaintiff "politely insisted on completing her statement and did so." *Id.* ¶¶ 43-44. Lane also repeatedly interrupted Ryan Losinger, a gay man, as he read a statement prepared by the woman who had brought the civil action against the City of Ithaca based on Moracco's actions. *Id.* ¶¶ 45-46. Defendant Lane did not interrupt Heather Bretz, a lesbian, as she "recounted to the Legislature witnessing the actions of police officer Moracco as, 'overly aggressive and abusive to a woman merely standing on the sidewalk alone not acting as a threat.'" *Id.* ¶¶ 47-48.[2] Plaintiff asserts that "Lane was particularly interested in stopping Losinger and Cipolla-Dennis from speaking while he allowed others to speak freely." *Id.* ¶ 49.[3] Plaintiff contends that "[t]his series of events began more than three years of systematic

---

[1]The Court presumes Plaintiff is referring to a meeting of the members of the Legislature.

[2]It is unclear from the Complaint when the actions Bretz spoke about occurred.

[3]Although not material to the instant matters, Plaintiff asserts that "Lane's stance was baffling to Cipolla-Dennis as to why Lane was limiting comments concerning something that was part of public record, as all of this information had been published in the local newspapers." Compl. ¶ 50.

discrimination as the Legislature began to create rules and procedures to silence Cipolla-Dennis at public meetings." *Id.* 51.

On June 24, 2014, the County Government Operations Committee adopted the "Rules for Speaking under Privilege of the Floor" ("the Rules"), *id.* at 56, and Defendant Lane announced the adoption of the Rules on July 1, 2014 at a Legislature meeting. *Id.* ¶ 57. The Rules are printed on a blue card ("Blue Card"), which indicates:

TOMPKINS COUNTY LEGISLATURE

(Please complete this form and submit to Clerk of the Legislature if you wish to speak at this meeting.)

Please Note: Three-Minute Time Limit

Rules for Speaking under Privilege of the Floor

1.   I agree to a three-minute time limit;

2.   I agree not to raise my voice;

3.   I agree not to use lewd, obscene, profane, slanderous or libelous language or speak or act in a manner that would tend to incite a breach of the peace;

4.   I agree not to speak about County personnel matters. Personnel matters include comments about the job performance of named County employees, other than elected officials;

5.   After three minutes I agree to leave the microphone and yield the floor;

6.   I agree that if I cause a disruption and am asked to leave, I will leave the Chambers.

Name (please print):_____

Municipality of Residence:_____

Representing (organization, etc.): _____ Topic:_____

_____
Signature

Written materials may be submitted to the Clerk of the Legislature.

*Id.* ¶ 1.

Individuals wishing to speak at public comment portions of County legislative meetings must sign the Blue Card and provide it to the Clerk of the Legislature.  Plaintiff contends that the requirements contained in paragraphs 2-6 of the Rule are unconstitutional prior restraints on speech, *id.*  ¶¶ 3-6, and that the requirement that a putative speaker must sign his or her name to the card is "in violation of the Open Meetings Law and is an unconstitutional prior restraint."  *Id.* ¶ 7.

At the public comment portion of a County Public Safety Committee meeting on May 18, 2017,  "Cipolla-Dennis refused to follow the [Rules] by refusing to fill out and sign her name to the [Blue Card]." *Id.* ¶ 58.   "Acting pursuant to the [Rules], the Chairperson of the County Public Safety Committee, [Defendant] John, told Cipolla-Dennis that she could not speak unless Cipolla-Dennis followed the [Rules]." *Id.* ¶ 59.   "Cipolla-Dennis read the statement anyway and John and several other Legislators attempted to stop Cipolla-Dennis." *Id.* ¶ 60.   While Plaintiff was reading her statement, three men "badgered" Cipolla-Dennis, and Cipolla-Dennis twice asked Defendant Robertson to intervene on her behalf to stop the three men from badgering her.  *Id.* ¶ 69.  "Instead of intervening on Cipolla-Dennis' behalf, Robertson, who purports to champion the rights of women and homosexuals, failed to intervene at all and instead literally turned her back on Cipolla-Dennis and walked away from her." *Id.* ¶ 70.  Cipolla-Dennis did not stop reading the statement, and John adjourned the meeting and called the Sheriff's Department to have

6

Cipolla-Dennis arrested. *Id.* ¶ 61. "Cipolla-Dennis finished her statement and left the chamber before any member of the Sheriff Department arrived and before Cipolla-Dennis could be arrested." *Id.* ¶ 62. The minutes of the meeting state: "A member of the public wished to speak but was not granted permission due to refusing to follow the Legislature rules for members of the public speaking under Privilege of the Floor. Following a request that the individual leave Chambers, it was MOVED by Mr. John, seconded by Mr. Stein, and unanimously adopted by voice vote, to enter into recess at 3:38 p.m. The meeting reconvened at 3:42 p.m." *Id.* ¶ 63. Plaintiff contends that "[b]y adjourning the meeting because of Cipolla-Dennis's refusal to follow the [Rules], John, Stein, and the other members of the Legislature, by voting in favor of the adjournment, deprived Cipolla-Dennis of the opportunity to address the government body, in violation of her First Amendment right." *Id.* ¶ 64. Plaintiff asserts that she "did not violate any of the established rules except for not giving her name—yet, everyone in the room knew Cipolla-Dennis by name as she is well known to everyone present due to her regular attendance and participation in Legislature meetings." *Id.* ¶ 65. Plaintiff further contends that "[t]he threat of arrest and prosecution for exercising her First Amendment rights has so chilled Cipolla-Dennis that she is afraid to speak before the Legislature." *Id.* ¶ 66. There are no allegations in the Complaint that the police contacted Plaintiff because of her actions on May 18, 2017, or that she was prosecuted for her conduct.[4]

---

[4]Although not material to the instant motions, Plaintiff asserts that approximately two to three weeks after the May 18, 2017 Legislature meeting, Robertson came to Cipolla-Dennis' home "ostensibly to deliver materials to Cipolla-Dennis' wife." Compl. ¶ 67. When Plaintiff asked Robertson why she failed to intervene when the three men badgered Plaintiff at the May 18, 2017 meeting, *id.* ¶¶ 68, 71, Robertson replied that Cipolla-Dennis "had violated the meeting rules by referring to a member of the Tompkins County Sheriff's Department, a Captain Bunce." *Id.* ¶ 71. Plaintiff explained to Robertson that she had not made any
(continued...)

7

### c. The Complaint

Plaintiff asserts in Count I of the Complaint that "Defendants have used their offices to retaliate against Cipolla-Dennis for exercising her constitutionally protected right of free speech to criticize and express opposition to the Legislature's adoption of the [Rules]." *Id.* ¶ 79. She also asserts that "Defendants silenced, censured, harassed, threatened and intimidated Cipolla-Dennis during her speaking turn at Legislature meetings and attempted to arrest her, all in retaliation against Cipolla-Dennis and to prevent her from speaking out about matters of public concern." *Id.* ¶ 80. She further asserts that "Defendants, acting under color of state law, have used threats and intimidation to prevent Cipolla-Dennis from speaking at public meetings on matters of public concern and to chill Ms. Cipolla-Dennis's speech." *Id.* ¶ 81.

Plaintiff asserts in Count II that "[o]n May 18, 2017, John, Stein, and other members of the County Legislature sitting as the County's Public Safety Committee, and acting pursuant to the Policy acted together and in concert to adjourn the public meeting to deprive Cipolla-Dennis of a public forum to address and present grievances to the Legislature and acted together under color of state law to keep Cipolla-Dennis from expressing her views to

---

[4](...continued)
reference to Captain Bunce at the May 18, 2017 meeting, but Robertson ignored Plaintiff's explanation "and instead stated 'The legislature can make any rules we want according to the county attorney. If you want things changed, Joanne, then you'll have to sue the county.'" *Id.* ¶ 73. Plaintiff told Robertson to leave her house and never come back. *Id.* ¶ 74. Plaintiff asserts:

> This incident caused significant emotional distress to Cipolla-Dennis, including, but not limited to, exacerbating her depression and causing severe anxiety.

> By way of example, Cipolla-Dennis was so upset by Robertson's cavalier, callous, and hypocritical manner that Cipolla-Dennis posted a sign on her property to ward strangers from coming on to her property.

*Id.* ¶¶ 75-76.

the Committee in public meetings." *Id.* ¶ 86.  She further asserts that "Defendants have conspired to harass, maliciously ridicule, threaten, and censure Cipolla-Dennis, and to retaliate against her to keep her from speaking out against County policies in public meetings," and that "Defendants knowingly and intentionally have acted in unison to violate Cipolla-Dennis' free speech rights." *Id.* ¶¶ 88-89.

For relief, Plaintiff seeks a declaration that "the Legislature Policy, practices and acts complained of are illegal and unconstitutional;" an injunction permanently enjoining Defendants "from intimidating, threatening and preventing Cipolla-Dennis from attending and speaking at County Legislature meetings and exercising her First Amendment rights;" compensatory damages; punitive damages against the individual Defendants; and attorney's fees and costs. Compl. Prayer for Relief, pp. 21-22.

## III.    STANDARDS OF REVIEW

### a.  Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)*(quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In assessing such a motion, the Court disregards legal conclusions, examines only the well-pleaded factual allegations, which the Court accepts as true, and draws all reasonable inferences in Plaintiff's favor."  *D.H. v. City of New York*, 309 F. Supp. 3d 52, 70 (S.D.N.Y. 2018)(citing *Iqbal*, 556 U.S. at 678–79).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of Farmington*, 826 F.3d 622,

630 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). The complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' however, dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### b. Rule 56

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### c. Preliminary Injunction

"A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)). "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs. v. Saban Entm't Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). When an injunction "alter[s] the status quo by commanding some positive act," however, that injunction is "mandatory." *Id.* Such an "injunction should issue 'only upon a clear showing that the moving party is entitled to relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

## IV. DISCUSSION

### a. Rule 12(b)(6) Motion

The Court first addresses Defendants' Rule 12(b)(6) motion.

#### 1. 2014 Conduct

Defendants argue that any claim based on conduct occurring in 2014 is barred by the applicable 3-year statute of limitations. Plaintiff contends that she "asserts no claim based upon an act against her in 2014, and provides the information concerning occurrences in 2014 by way of background." Pl. Mem. L., at 10. She also contends that "[t]he events in

2014, however, led to the adoption of a policy that resulted in a deprivation of Cipolla-Dennis' rights in 2017, the basis for Cipolla-Dennis' first count for deprivation of her First Amendment rights in her complaint, timely filed on October 17, 2018, well within the 3-year statute of limitations period for section 1983 actions." *Id.*

The statute of limitations for a § 1983 action arising in New York is three years. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009); *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 Fed. Appx. 672, 674 (2d Cir. 2009) (summary order). Based on Plaintiff's concession that she "asserts no claim based upon an act against her in 2014," Defendants' motion seeking dismissal of claims arising from 2014 conduct is granted. All claims for conduct taken in 2014, including any claim that Defendants retaliated against Plaintiff for the content of speech by enacting the Rules, are dismissed with prejudice. *See Linares v. McLaughlin*, 423 F. App'x 84, 86 (2d Cir. 2011)("To establish a case of retaliation in violation of the First Amendment, a plaintiff must demonstrate that: (1) [s]he engaged in protected conduct; (2) the defendant took adverse action against [her]; and (3) there was a causal connection between the two." ); Compl. ¶¶ 56 & 57 (The County Government Operations Committee adopted the Rules on June 24, 2014, and Defendant Lane announced their adoption on July 1, 2014 at a Legislature meeting.). Plaintiff may rely on the 2014 conduct in support of claims based on conduct occurring within the limitations period.

### 2. Regulations in the Rules

Next, Defendants argue that each of the requirements in the Rules are permissible content neutral requirements governing the public comment portions of County legislative

meetings. Plaintiff counters that the County impermissibly excluded comments about personnel matters of non-elected County employees in violation of her First Amendment right to comment on matters of public concern.

"Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). To determine whether the County's attempt to restrict constitutionally-protected speech is prohibited by the First Amendment, "the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech." *Am. Freedom Def. Initiative v. Metro. Transp. Auth*., 880 F. Supp.2d 456, 469 (S.D.N.Y. 2012). In the Second Circuit, there are four classifications of government property for purposes of speech: (1) traditional public fora, (2) designated public fora, (3) limited public fora, and (4) nonpublic fora. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011). "Once the Court determines the forum, it then applies the requisite standards for that forum to the challenged speech restriction." *Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 288 (E.D.N.Y. 2018)(internal quotation marks and citation omitted).

As both parties acknowledge, the public comment portions of County legislative meetings are limited public fora. *See* Def. Mem. L., at 5 ("The Tompkins County Legislature is, undoubtedly, . . . an elected municipal board and its meeting[s] are unquestionably limited public [fora] under well-established law."); Pl. Mem. L., at 11 ("In a situation where

the state has opened government property as a forum for public expression of ideas and debate, that is not traditionally a public forum, such forum is referred to as a 'designated' or limited public forum.[5] . . . In a limited public forum, the government is free to impose an exclusion of certain types of speech, but once it allows expression of a certain type, it may not deny expression of other types."); *see also Madden v. Town of Hempstead*, No. 16-CV-6835 (SJF)(AKT), 2019 WL 1439935, at *15 (E.D.N.Y. Mar. 29, 2019)("[A] public meeting of an elected municipal board, such as the January 10, 2017 Town Board meeting, is considered to be a limited public forum."); *Weinberg v. Village of Clayton, N.Y.*, No. 5:17-cv-0021, 2018 WL 5777292, at * 7 (N.D.N.Y. Nov. 2, 2018) ("Village Board meetings are deemed to be a limited public forum."); *Arnold v. Ulatowski*, No. 5:10-CV-1043 (MAD/ATB), 2012 WL 1142897, at *4 (N.D.N.Y. Apr. 4, 2012)(Courts "have generally held that a public meeting of an elected municipal board ... is a limited public forum for purposes of First Amendment analysis.'") (quoting *Malta v. Slagle*, No. 05–CV–342S, 2007 WL 952045, *3 (W.D.N.Y. Mar.29, 2007)); *Smith v. City of Middletown*, No. 3:09-cv-1431, 2011 WL 3859738, at * 4 (D. Conn. Sept. 1, 2011), *aff'd sub nom Smith v. Santangelo*, 518 F. App'x 16 (2d Cir. May 1, 2013) ("Numerous courts have held that city council meetings which have been opened to the public are limited public fora.... [T]he public comment period during the Council meeting [also] constitute[s] a limited public forum.").

---

[5]A designated public forum is a public forum created by government designation as "a place or channel of communication for use by the public at large...." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 803 (1985). The courts distinguish between a limited designated public forum and an unlimited designated public forum. *Arnold v. Ulatowski*, No. 5:10-CV-1043 (MAD/ATB), 2012 WL 1142897, at *4 (N.D.N.Y. Apr. 4, 2012) (citing *N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 128 & n. 2 (2d Cir.1998)). A limited public forum is a subset of the designated public forum "that arises 'where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *Id.* (quoting *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004)).

14

A government entity may exclude discussion of certain topics in a limited public forum as long as the exclusion is viewpoint neutral and reasonable. *Weinberg*, 2018 WL 5777292, at *7); *see also Pleasant Grove City, Utah v. Summum*, 129 S. Ct. 1125, 1132 (2009)(In a limited public forum, "a government entity may impose restrictions on speech that are reasonable and viewpoint-neutral.")(citing *Good News Club v. Milford Central School*, 533 U.S. 98, 106–07 (2001)); *Arnold*, 2012 WL 1142897, at *4 ("If the expressive activity does not fall within the limited category for which the forum has been opened, however, restrictions on speech need only be reasonable and viewpoint neutral." )(citing *Hotel Employees & Rest. Employees Union Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002)). "Thus, in a limited public forum, government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Hotel Employees & Rest. Employees Union Local 100 of N.Y.*, 311 F.3d at 545–46 (interior quotation marks and citation omitted).

Plaintiff has not alleged that Defendants have allowed comments about personnel matters of non-elected County employees after the Rules were adopted. Thus, the County can exclude this genre of speech at the public comment portions of its legislative meetings as long as the exclusion is viewpoint neutral and reasonable. A rule is viewpoint neutral if it is "based on the manner in which speakers transmit their message to viewers and not upon the message they carry." *Turner Broadcasting Systems. Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a

regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* Nevertheless, "even a regulation neutral on its face may be content based if its manifest purpose is to regulate speech because of the message it conveys." *Turner*, 512 U.S. at 645.

Although Plaintiff attempts to combine the prohibition on commenting on County personnel matters with the prohibition on using slanderous or libelous language to argue that the personnel matter prohibition is content based, the Rules address these two prohibitions in separate paragraphs. A reading of the plain text of the Rules indicates that they are separate regulations, and does not support Plaintiff's contention that the County personnel matter prohibition is content based. The cases Plaintiff cites for the proposition that a restriction on discussing public employee personnel matters is an unconstitutional content-based restriction, *Baca v. Mareno Valley Unified Central School District*, 936 F Supp 719 (C.D. Cal. 1996), and *Levanthal v. Vista Unified School District*, 973 F. Supp. 951 (S.D. Cal 1997), are inapposite. Both cases addressed regulations that specifically restricted only negative comments about employees and their performances. *See Baca*, 936 F. Supp at 725, 730; *Levanthal,* 936 F. Supp at 954, 960. The clear terms of the Rules prohibits *all* comments about the job performances of named County employees other than elected officials. This exclusion is viewpoint neutral in that it prohibits both positive and negative comments about County personnel matters related to particularly identified, non-elected, County employees. *See e.g., Hill v. Colorado*, 530 US 703, 724-725 (2000)

16

(explaining that challenged speech restrictions were constitutional content neutral restrictions because they applied to everyone regardless of their point of view, even though the rules were undoubtedly aimed at a particular group - anti-abortion protesters); *Smith v. City of Middletown*, No. 3:09-CV-1431 JCH, 2011 WL 3859738, at *6 (D. Conn. Sept. 1, 2011), *aff'd sub nom. Smith v. Santangelo*, 518 F. App'x 16 (2d Cir. 2013).[6]

As to the reasonableness of excluding this genre of speech, Defendants assert that the Legislature "is almost never the employer responsible for employee performance and, hence, not the correct entity to hear personnel matters involving particular named employees;" that employees are rarely present at legislative meetings to defend themselves or to respond to such issues, and, in the event an employee is present, the discussion or debate on the particular individual's job performance would be inappropriate for a meeting of a legislative body "which should . . . be focused on legislative matters;" and that "public discussion of a named person's job performance is simply not a fair or appropriate way to address job performance issues, which should be directed to the employee's supervisor and dealt with in a manner that treats the employee respectfully, not a subject of public statements at legislature meetings." Def. Mem. L., pp. 6-7. In response, Plaintiff argues that "the Legislature has no legitimate interest in the privacy of County employees, or their job performance, to bar public comment about individual employees." Pl. Mem. L., at 12. While Plaintiff's opposition fails to specifically refute Defendants' reasons for excluding this

---

[6]("Rules restricting speech at the Council meetings must be viewpoint neutral, and those rules must be applied by the Council in an even-handed fashion. However, it is the rules themselves which must be viewpoint-neutral: the motivation for adopting a rule need not be viewpoint-neutral. . . . [T]he Council has adopted a Resolution which restricts when a member of the public can speak to the Council about certain topics. The restrictions apply regardless of an individual's viewpoint on a given topic. The rule itself is unquestionably viewpoint-neutral.").

genre of speech,[7] the Court is prohibited from examining the merits of Defendants' reasons for this exclusion on a Rule 12(b)(6) motion. Thus, Defendants' motion must be denied to the extent Plaintiff alleges that her First Amendment rights were violated by the exclusion of comments about personnel matters of non-elected County employees.

Other than Plaintiff's challenge to the Rules under New York's Open Meetings Law (discussed below), and her facial challenges to the prohibitions on discussing County personnel matters and using slanderous or libelous language (also discussed below), Plaintiff presents no opposition to Defendants' contention that the other regulations in the Rules are permissible content-neutral and reasonable requirements. Any claim that these other regulations violate Plaintiff's First Amendment rights is deemed abandoned and, therefore, dismissed. *See Russell v. N.Y. Univ.*, No. 1:15-cv-2185, 2017 U.S. Dist. LEXIS 111209, at *99 (S.D.N.Y. July 17, 2017)(failure to address defendant's arguments for dismissal of claims deems those claims abandoned); *Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019)("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.")(collecting cases). Moreover, the regulations limiting public comments to three minutes after which the speakers must leave the microphone and yield the floor; prohibiting speakers from raising their voices; prohibiting speakers from using lewd, obscene, or profane language; prohibiting speaking or acting in a manner that would tend to incite a breach of the peace; and requiring speakers to agree to leave the legislative

---

[7]Even assuming that the Legislature has no legitimate interest in the privacy of County employees or their job performances, this does not necessarily countervail Defendants' asserted reasons for excluding this genre of speech from the public comment portions of legislative meetings.

chambers if they cause a disruption are content-neutral regulations. These regulations apply to all speakers regardless of viewpoint, and Plaintiff has not argued, nor does the Court find, that a basis exists upon which to conclude that the manifest purpose behind these regulations is to regulate speech due to the message a speaker may convey. Further, these regulations are narrowly tailored to serve the County's significant interest in conducting the public comment portions of its legislative meetings in an orderly and effective fashion. *See Madden*, 2019 WL 1439935, at *15 ("[T]he Town clearly had a significant interest in conducting its meeting in an orderly and effective fashion,"); *Brenchley v. Vill. of Phoenix*, No. 5:01-CV-0190, 2005 WL 2437027, at *4 (N.D.N.Y. Sept. 30, 2005)("It is settled law that 'the Village had a significant interest in conducting its meeting in an orderly and effective fashion . . . .")(interior quotation marks and citation omitted); *see also White v. City of Norwalk*, 900 F. 2d 1421 (9th Cir 1990)(holding that a rule that prohibits "loud, threatening, personal, impertinent, slanderous or profane remarks" does not infringe on First Amendment rights so long as people are not removed from the chamber without causing a disruption); *Wright v. Anthony*, 733 F. 2d 575 (8th Cir. 1984) (A time limit for speakers is a reasonable time, place and manner restriction and serves "a significant governmental interest in conserving time and in ensuring that others had an opportunity to speak."); *Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1372 (D. Kansas 1998) (rule prohibiting personal, rude or slanderous remarks is reasonable content neutral restriction because it is not based on a particular message and serves the significant governmental interest of having orderly meetings); *see e.g. Davis v. Hennepin County*, 402 Fed. App'x. 147, 2010 WL 4455191 (8th Cir. 2010) (the County's rules to sign up for speaking at a public

meeting were content neutral and thus did not violate plaintiffs free speech rights; plaintiff's refusal to follow the rules disrupted the meeting and security officers were justified in removing plaintiff from the room).  Thus, Defendant's motion is granted to the extent it seeks to dismiss Plaintiff's First Amendment claims premised on the Rule's regulations other than the prohibitions on speaking about personnel matters of non-elected County employees and using slanderous or libelous language.

### 3.  Constitutional Overbreadth Challenges

Plaintiff also argues that the prohibitions on commenting on personnel matters of non-elected County employees and on using slanderous or libelous language are unconstitutionally overbroad and therefore violate her First Amendment rights. *See* Pl. Mem. L. at 12-14.   As discussed below, these claims are not properly before the Court because Plaintiff has not alleged any unconstitutional overbreadth claim in the Complaint.

### 4.  Unconstitutional Prior Restraints & Open Meetings Law

Defendants argue that the Rules do not operate as unconstitutional prior restraints. Def. Mem. L., at 5-8.   Plaintiff fails to mention "unconstitutional prior restraint" in her memorandum of law, and the only time she uses the adverb "prior" is when she argues in support of her cross-motion for summary judgment:

> [The jurisprudence on Article III standing] illustrates the improper use of the rules by the Legislature to curtail speech on issues for which the County lacks "standing" and which is counter to the purpose of the Open Meetings Law. Since the rules are written in a "blue card" that a potential speaker has to sign prior to speaking, there is no fact in dispute concerning the language of the rules, or the fact that the rules chill the First Amendment freedom of speech of Cipolla-Dennis.

Pl. Mem. L. at 17-18.[8]  Plaintiff also references New York's Open Meetings Law when she argues that "[t]he rules thwart the exercise of First Amendment rights by Cipolla-Dennis, and is contrary to the express purpose of the Open Meetings Law to foster a 'climate under which the commonweal will prosper… .'" *Id.* at 16 (quoting N.Y. Pub. Officers L. § 100).  The only time Plaintiff mentions the Open Meeting Law in the Complaint is when she assets that "[t]he Policy form requires the speaker to sign their name in violation of the Open Meetings Law and is an unconstitutional prior restraint." Compl. ¶ 7.

Plaintiff's argument that the Rules are contrary to New York's Open Meetings Law, N.Y. Pub. Officers L. §§ 100-111, is without merit.  Neither the purpose of the Open Meetings Law nor its express provisions address requirements or restrictions on public comments at legislative meetings. *See Gernatt Asphalt Prod., Inc. v. Town of Sardinia*, 87 N.Y.2d 668, 686 (N.Y. 1996)("The purpose of the Open Meetings Law is to prevent municipal governments from debating and deciding in private what they are required to debate and decide in public."); *Jacobs v. New York City Landmarks Pres. Comm'n*, 59 Misc. 3d 1223(A), 93 N.Y.S.3d 626 (N.Y. Sup. Ct. 2017)(The Open Meetings Law merely "requires an opportunity for the public to participate only by observing and listening to the proceedings, not by speaking at the meeting as [Plaintiff] contend."); *see also* N.Y. Pub. Officers L. §§ 100-111.  Thus, to the extent Plaintiff asserts a claim for a violation of the Open Meetings Law, the claim is dismissed.

Even assuming, *arguendo*, that the requirement that putative speakers sign the Blue

---

[8]Plaintiff fails to explain how Article III standing, which  is a doctrine rooted in the traditional understanding of the case-or-controversy limitation on federal judicial power, *Burgin v. Brown*, No. 15-CV-201S, 2018 WL 1932598, at *4 (W.D.N.Y. Apr. 24, 2018)(citation omitted), applies to the County's decision to implement and apply the Rules.

Card violates New York's Open Meetings Law, it does not operate as an unconstitutional prior restraint because it does not give Defendants the power or discretion to deny the use of the forum in advance of the actual expression. *See Hobbs v. County of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005) (defining a prior restraint as "any regulation that gives public officials the power to deny use of a forum in advance of actual expression") (citations and brackets omitted); *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005)("A 'prior restraint' on speech is a law, regulation or judicial order that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression.")(citations omitted); *In re G. & A. Books, Inc.*, 770 F.2d 288, 295–96 (2d Cir. 1985)("Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated."); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 387, n. 8 (2d Cir. 2018)*("This circuit has leaned towards limiting the constitutional meaning of 'prior restraints' to content-based regulations, although we have not tipped entirely in that direction, and have occasionally teetered away.")(citations omitted). Likewise, the other regulations in the Rules do not amount to unconstitutional prior restraints because they do not give Defendants the power or discretion to deny use of the forum in advance of the actual expression. Accordingly, that portion of Defendants' motion seeking to dismiss Plaintiff's unconstitutional prior restraint claims is granted.

### 5. First Amendment Deprivation on May 18, 2017

Defendants also argue that any claim that Plaintiff was deprived of her First Amendment rights when she appeared at a County Public Safety Committee meeting on

May 18, 2017 must be dismissed.  Defendants maintain that Plaintiff does not allege that she was deprived of the opportunity to express her views on this date, but rather that the Committee meeting was adjourned because Plaintiff refused to followed the Rules.

Defendants argue:

> The rules did not prevent plaintiff from expressing her views; it was solely her refusal to follow the rules that created the conflict at issue. Indeed, the complaint does not describe the content of plaintiff's statement, nor does it allege that the County Legislature acted as a result of the content of the statement. The reaction of the Legislature was purely in response to plaintiff's failure to follow the rules. This does not rise to a constitutional issue.

Def. Mem. L., p. 9.

Other than arguing that the "rules she refused to follow were overbroad and unconstitutional," Pl. Mem. L. at 10, Plaintiff has not specifically opposed this aspect of Defendants' motion.  Thus, any claim alleging Defendants deprived Plaintiff of the ability to speak at the legislative meeting on May 18, 2017 because of the content of her speech is deemed abandoned.  Furthermore, the Complaint lacks allegations plausibly indicating that Defendants took adverse action against Plaintiff on May 18, 2017 due to the content of her speech.  Plaintiff does not assert in the Complaint what the content of her speech was on this date,[9] and there are no allegations plausibly indicating that Defendants attempted to prevent Plaintiff from speaking because of the content of her speech.  Rather, Plaintiff asserts that Defendants attempted to curtail her speech, adjourned the meeting, and called

---

[9]While Plaintiff asserts in her declaration filed in support of the cross-motion that on May 18, 2017 she "did not mention anyone except for elected officials in [her] statement," Cipolla-Dennis Decl. ¶ 34, Plaintiff cannot amend the Complaint by a declaration. Plaintiff also asserts in her declaration that she spoke at several Legislature meetings in 2015 about the manner the Sheriff's Department executed a warrant, *see* Cipolla-Dennis Decl. ¶¶ 22-26, spoke on August 2, 2016 about Plaintiff's apprehension of encountering the police, *id*. ¶ 26, and spoke on December 20, 2016 about her belief that Defendant Lane was discriminating against Plaintiff, female legislators, and "other gay people during public comment." *Id.* ¶ 27.  These allegations do not appear in the Complaint.

the police because she refused to sign and submit a Blue Card as required by the Rules. *See* Compl. ¶¶ 58-59 ("On May 18, 2017, at a public County Public Safety Committee meeting, Cipolla-Dennis refused to follow the Legislature Policy by refusing to fill out and sign her name to the 'blue card' which was the Policy form adopted by the Legislature . . . . *Acting pursuant to the Policy*, the Chairperson of the County Public Safety Committee, *John, told Cipolla-Dennis that she could not speak unless Cipolla-Dennis followed the Legislature Policy*.")(emphasis added); *id.* ¶ 64 ("By adjourning the meeting *because of Cipolla-Dennis's refusal to follow the Policy*, John, Stein, and the other members of the Legislature, by voting in favor of the adjournment, deprived Cipolla-Dennis of the opportunity to address the government body, in violation of her First Amendment right.")(emphasis added). Furthermore, Plaintiff fails to allege that Defendants allowed other individuals to speak at public sessions without first signing the Blue Card. Thus, the Complaint lacks plausible factual allegations from which to infer that Defendants' enforcement of the Rules to Plaintiff on May 18, 2017 was motivated by the content of Plaintiff's anticipated speech.

Plaintiff also fails to assert facts plausibly indicating that Defendant Robertson, by failing to intervene to stop three men from badgering Plaintiff during her speech, sought to curtail Plaintiff from speaking based on the viewpoint she was expressing. In fact, Plaintiff does not allege that the three men badgered her due to the content of her speech, and she contends that despite their badgering she finished her statement. Compl. ¶¶ 61-62.

Inasmuch as the Complaint fails to assert factual allegations plausibly indicating that Defendants attempted to curtail Plaintiff's speech, adjourned the meeting, and called the

police due to the content of her speech on May 18, 2017, any First Amendment censorship or retaliation claim from this date is dismissed without prejudice to re-pleading. *See Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018)(To state an actionable First Amendment retaliation claim, Plaintiff "must plausibly allege that (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant[s] took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech.")(interior quotation marks and citation omitted); *Madden*, 2019 WL 1439935, at *14 -*15 ("The record is bereft of any evidence from which a rational jury may reasonably find that Santino, or any of the other defendants, refused to let plaintiff speak at the meeting because of the content of her anticipated speech. . . . Accordingly, the Town Defendants have established their entitlement to judgment as a matter of law with respect to plaintiff's First Amendment free speech, access to government and peaceable assembly claims relating to the January 10, 2017 Town Board meeting.").

### 6. Conspiracy Claim

Defendants argue that Plaintiff fails to state a plausible Section 1983 conspiracy claim. The Court agrees. A § 1983 conspiracy claim requires "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (same); *Galgano v. County of Putnam, N.Y.*, No. 16-CV-3572 (KMK), 2018 WL 4757968, at *32 (S.D.N.Y. Sept. 28, 2018)(same). "[C]onspiracies are by their very nature secretive operations, and may have

to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (internal quotation marks omitted). However, to state a viable conspiracy claim, Plaintiff "'must provide some factual basis supporting a meeting of the minds'" of the alleged conspirators to carry out the unlawful plan. *Galgano*, 2018 WL 4757968, at *32 (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted)). "Thus, Plaintiff must 'make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Id.* (quoting *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)(citations and internal quotation marks omitted)). To avoid dismissal, Plaintiff must allege "'facts upon which it may be plausibly inferred that [the individual Defendants] came to an agreement to violate [Plaintiff's] constitutional rights.'" *LoPorto*, 2018 WL 4565768, at *13 (quoting *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (citation omitted)); *see Phillips v. County of Orange*, 894 F. Supp. 2d 345, 383–84 (S.D.N.Y. 2012) ("Allegations of conspiracy must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.")(internal quotation marks and citation omitted). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of [her] constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotation marks omitted).

The Complaint fails to contain factual allegations plausibly supporting the inference

that the individual Defendants came to a meeting of minds to deprive Plaintiff of her First Amendment rights. As Plaintiff alleges, the individual Defendants attempted to stop Plaintiff from speaking, adjourned the meeting, and called the police because Plaintiff failed to follow the Rules and sign a Blue Card. *See* Compl. ¶ 86. While the adjournment might have deprived Plaintiff of a public forum to address and present grievances to the Legislature, the mere fact that the Defendants agreed to adjourn the meeting when Plaintiff failed to follow the Rules is insufficient to plausibly establish that the Defendants came to a meeting of minds to violate Plaintiff's First Amendment rights. *See Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (finding claims that defendants worked together insufficient to suggest an improper motive); *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 154 (2d Cir. 2006) (finding that the fact that government employees from various federal and state agencies cooperated does not, without more, prove they conspired to violate plaintiff's rights); *Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (concluding that "several telephone calls and other communications" were not sufficient to show conspiracy); *Hutchins*, 2018 WL 4757970, at *26 ("The facts Plaintiff points to fail to do more than describe a group of police officers working on the same case and passing information on to a prosecutor. Plaintiff does not allege when or how any of the Defendants agreed to violate Plaintiff's rights, what the scope of the agreement was, or any other detail regarding the alleged agreement. Plaintiff thus fails to allege a factual basis supporting the existence of an agreement."); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009) (dismissing conspiracy claim on summary judgment where the plaintiff "provide[d] no evidence, absent the fact that the

[i]ndividual [d]efendants worked together, that ... an agreement existed"). Moreover, as indicated above, the allegations in the Complaint fail to assert a plausible First Amendment censorship or retaliation claim on May 18, 2017. Because Plaintiff fails to plead sufficient factual allegations plausibly supporting the conclusion that the individual Defendants reached an agreement to violate Plaintiff's First Amendment rights on May 18, 2017, or had a meeting of minds to carry out such a plan, the claim is dismissed without prejudice to re-pleading. *See Hutchins v. Solomon*, No. 16-CV-10029 (KMK), 2018 WL 4757970, at *26 (S.D.N.Y. Sept. 29, 2018) ("Plaintiff neither properly alleges the required existence of an agreement, nor the required meeting of the minds, between [Defendants]."); *see also Baines v. City of New York*, No. 10-CV-9545, 2015 WL 3555758, at *12 (S.D.N.Y. June 8, 2015) ("Although [the] [p]laintiff repeatedly asserts that [the] [d]efendants entered an agreement to violate his civil rights ..., the [complaint] is devoid of facts that would render that allegation plausible as opposed to merely conceivable." (citation omitted)).

### b. Plaintiff's Cross-Motion For Partial Summary Judgment

In support of the cross-motion for partial summary judgment, Plaintiff argues that the Rules are in violation of the Open Meetings Law and "thwart the exercise of First Amendment rights by Cipolla-Dennis," and that "[t]he language in the rules is vague and overbroad, and does not define 'personnel matters,' thus depriving Cipolla-Dennis of knowing the exact nature and scope of the prohibited speech." Pl. Mem. L., at 16-17. Plaintiff also argues in opposition to Defendants' motion to dismiss that the prohibition on using slanderous or libelous language is unconstitutionally overbroad. *See* Pl. Mem. L. at 12-14.

For the reasons discussed above, Plaintiff's argument that the Rules are in violation of the Open Meetings Law and thereby thwart her excises of First Amendment rights is rejected. The motion for partial summary judgment on this ground is denied.

As to Plaintiff's contention that language in the Rules is unconstitutionally vague and overbroad, the motion is denied with leave to renew. The Complaint alleges claims for First Amendment retaliation and censorship, a Section 1983 conspiracy, and that the regulations in the Rules amount to unconstitutional prior restraints. There are no claims asserted in the Complaint that specific language in the Rules is unconstitutionally vague and/or overbroad, and Plaintiff cannot assert such claims for the first time in a memorandum of law. *See Thomas v. Egan*, 1 Fed. Appx. 52, 54 (2d Cir. 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim.... Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Klein v. Frenkel*, No. 14-cv-2719, 2015 WL 13721693, at *4–5 (E.D.N.Y. Feb. 19, 2015)("Although a plaintiff need not cite to a particular statute or legal theory, [she] must not raise wholly new claims for [the] first time in submissions for summary judgment."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp.2d 394, 407–09 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts ... have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (collecting cases)*; see also Citizens United v. Schneiderman*, 882 F.3d 374, 383 (2d Cir. 2018)("To succeed on a facial First Amendment challenge to the Attorney General's regulations under these standards, Appellants would have to plead either that no application would be permissible

29

or that a 'substantial number' of its applications are likely to result in the prevention of material support for protected expression."); *Vetrano v. Miller Place Union Free Sch. Dist*., No. 2:16-CV-03329, 2019 WL 885365, at *9 (E.D.N.Y. Feb. 22, 2019)(denying the plaintiff leave to amend the complaint where, "[f]or the first time, the Plaintiff in his opposition [to summary judgment] asserts a claim that the Code of Conduct is unconstitutionally vague under the First Amendment."); *Irshad Learning Ctr. v. Cty. of DuPage*, 804 F. Supp. 2d 697, 712 (N.D. Ill. 2011)("The Court does not read Plaintiff's complaint as including a facial challenge to the relevant zoning ordinance, and therefore will not address Defendants' arguments on this point."). Plaintiff is free to move to amend the Complaint to assert claims of unconstitutional vagueness or overbreadth, but she cannot proceed on such claims until the Complaint is amended. Accordingly, Plaintiff's motion for summary judgment on the grounds of unconstitutional vagueness or overbreadth is denied with leave to renew upon amendment of the Complaint.

### c. Motion for Preliminary Injunction

Plaintiff's motion for a mandatory preliminary injunction is based on Plaintiff's contention that the language in the Rules is unconstitutionally overbroad. *See* Pl. Mem. L. at 20 ("[T]his Court should issue an injunction, enjoining Tompkins County from enforcing the rule it adopted that is overbroad, serves no compelling government interest, and deprives citizens, like Cipolla-Dennis, of their First Amendment right to free speech."). But because this constitutional claim is not properly before the Court at this time, Plaintiff is unable to meet the substantive requirements for the sought-after injunctive relief. Thus, like the motion for partial summary judgment, Plaintiff's motion for a preliminary injunction is

denied with leave to renew upon amendment of the Complaint.

## V.  CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss, Dkt. No. 6, is **GRANTED in part** and **DENIED in part**.  The motion is granted in that: (1) any First Amendment claim arising from conduct occurring in 2014 is **DISMISSED**; (2) Plaintiff's First Amendment claims premised on the regulations in the Rules for Speaking under Privilege of the Floor ("the Rules"), other than the prohibitions on speaking about personnel matters of non-elected County employees and using slanderous or libelous language, are **DISMISSED**; (3) Plaintiff's First Amendment claims alleging that the regulations in the Rules amount to unconstitutional prior restraints are **DISMISSED**; (4) any claim asserting a violation of New York's Open Meetings Law, N.Y. Pub. Officers L. §§ 100-111, is **DISMISSED**; (5) any First Amendment censorship or retaliation claim based on conduct occurring on May 18, 2017 is **DISMISSED without prejudice to re-pleading**; and (6) Plaintiff's Section 1983 conspiracy claim is **DISMISSED without prejudice to re-pleading**. The motion is denied in all other respects.

Plaintiff's cross-motions for partial summary judgment, and for a preliminary injunction, Dkt. No. 13, are **DENIED** with leave to renew upon amendment of the Complaint.

**IT IS SO ORDERED.**

Dated:    May 20, 2019

Thomas J. McAvoy
Senior U.S. District Judge

31