**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOANNE CIPOLLA-DENNIS,**

                    **Plaintiff,**

v.                                              **1:18-CV-1241 (NAM/ML)**

**COUNTY OF TOMPKINS, MICHAEL LANE,**
**RICH JOHN, MARTHA ROBERTSON and**
**JAMES DENNIS, individually and as Members**
**of the Tompkins County Legislature,**

                    **Defendants.**
_____

**APPEARANCES:**

*Attorney for Plaintiff*
Edward E. Kopko
Office of Edward E. Kopko
308 N. Tioga Street, 2nd Floor
Ithaca, NY 14850

*Attorneys for Defendants*
Michael D. Pinnisi, Sr.
Pinnisi, Anderson Law Firm
520 Cayuga Heights Road
Ithaca, NY 14850

Jonathan Wood
Tompkins County Attorney
125 East Court Street
Ithaca, NY 14850

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

      Plaintiff Joanne Cipolla-Dennis brings this action under 42 U.S.C. § 1983 asserting

claims against Defendants County of Tompkins and Michael Lane, Rich John, Martha

Robertson, and James Dennis, individually and as members of the Tompkins County Legislature, for alleged violations of her First Amendment rights and a related conspiracy. (Dkt. No. 32).  Now before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 38, 40).[1]

## II.    BACKGROUND[2]

### A.  Procedural History

Plaintiff filed her original complaint on October 17, 2018.  (Dkt. No. 1).  Thereafter, Defendants moved to dismiss, and Plaintiff filed a cross-motion for partial summary judgment. (Dkt. Nos. 6, 13).  On May 20, 2019, the Honorable Thomas J. McAvoy issued a decision denying Plaintiff's partial motion for summary judgment and granting in part and denying in part Defendants' motion to dismiss.  (Dkt. No. 16).  The Court dismissed several claims without prejudice.  (*Id.*).  Plaintiff then filed the First Amended Complaint, (Dkt. No. 32), wherein she alleged the claims at issue here.

### B.  The Tompkins County Legislature

Plaintiff lives in Tompkins County, New York.  (Dkt. No. 40-9, ¶ 2).  The Tompkins County Legislature ("the Legislature") holds meetings that are open to the public.  (Dkt. Nos. 38-2, ¶ 1; 40-9, ¶¶ 4–5).  The meetings include time for members of the public to provide comments.  (Dkt. No. 38-4, ¶ 4).  Some Legislature meetings have had over fifty speakers; Defendants claim that, to ensure order, the Legislature requires that those who wish to speak sign in by submitting a printed blue card.  (Dkt. Nos. 38-4, ¶ 4; 38-6, ¶ 3; 38-7, ¶ 3).  The sign-in

---

[1] This case was reassigned to the Hon. Norman A. Mordue on October 27, 2020.  (Dkt. No. 51).

[2] The facts have been drawn from the parties' Local Rule 7.1(a)(3) statements, (Dkt. Nos. 38-2, 40-8), their responses and additional statements, (Dkt. Nos. 47-1, 48-3), and the parties' attached exhibits, depositions, and declarations (*see generally* Dkt. Nos. 38, 40, 47, 48, and 50), to the extent that they are in admissible form.

system has been in place for many years.  (Dkt. No. 38-4, ¶ 5).  Defendants John and Lane claim that the meeting chair calls on members of the public for comments following the order of the blue cards received, and no member of the public who has signed a blue card has ever been denied the opportunity to speak.  (Dkt. Nos. 38-6, ¶ 3; 38-7, ¶ 3).  The Legislature also has committees which meet separately, including the Public Safety Committee.  (Dkt. No. 38-7, ¶ 2).

On September 23, 2014, the blue card was amended to add the following language: "Personnel matters should be directed to the relevant Department and/or Supervisor or in the case of a Department Head to the County Administrator except for the County Administrator, County Attorney, Finance Director, and Clerk of the Legislature, which should be directed to the Chair of the Legislature."  (38-4, ¶ 6).  The blue card has been further revised over the years, and on May 18, 2017, it read as follows under the header "Rules for Speaking under Privilege of the Floor":

TOMPKINS COUNTY LEGISLATURE

(Please complete this form and submit to Clerk of the Legislature if you wish to speak at this meeting.)

Please Note: Three-Minute Time Limit
Rules for Speaking under Privilege of the Floor

1. I agree to a three-minute time limit;
2. I agree not to raise my voice;
3. I agree not to use lewd, obscene, profane, slanderous or libelous language or speak or act in a manner that would tend to incite a breach of the peace;
4. I agree not to speak about County personnel matters. Personnel matters include comments about the job performance of named County employees, other than elected officials;
5. After three minutes I agree to leave the microphone and yield the floor;
6. I agree that if l cause a disruption and am asked to leave, I will leave the Chambers.

Name (please print): _____
Municipality of Residence: _____

Representing (organization, etc.): _____     Topic: _____

_____
Signature

Written materials may be submitted to the Clerk of the Legislature.
Personnel matters should be directed to the relevant Department and/or
Supervisor or in the case of a Department Head to the County
Administrator except for the County Administrator, County Attorney,
Finance Director, and Clerk of the Legislature, which should be directed
to the Chair of the Legislature.

(Dkt. No. 38-4, ¶ 6, Ex. B) (this version, hereinafter, "the Blue Card Rules").

**C.  Legislature Meetings Prior to 2017**

Plaintiff frequently attended and participated in Legislature meetings before May 18,

2017, and she spoke on many different subjects over the years.  (Dkt. Nos. 38-5, ¶ 4, 40-9, ¶ 3).

Plaintiff submitted blue cards before speaking on previous occasions.  (Dkt. Nos. 38-4, ¶ 8, Ex.

D; 48-3, ¶ 7).  On January 13, 2014, Plaintiff spoke at a meeting of the Public Safety Committee

("the Committee") and voiced concerns about Tompkins County Deputy Sheriff Stephen

Moracco, but she was stopped by the Committee Chair, Brian Robison.  (Dkt. Nos. 38-10, ¶ 3;

40-9, ¶¶ 32–35).  Plaintiff alleges that she spoke to the Committee about a civil case against the

City of Ithaca where the plaintiff,  "a gay female, alleged that Ithaca City Police Officer, Stephen

Moracco (now a Tompkins County Deputy Sheriff), wrongfully arrested and assaulted [her] in

his patrol vehicle with erratic and dangerous driving as he transported [her] to the Ithaca City

police station."  (Dkt. No. 40-9, ¶ 32).  Plaintiff alleges that Chair Robison directed her to stop

speaking when two women entered the meeting room.  (*Id.*, at ¶¶ 33–34).  The Tompkins County

Sherriff, who was present at the meeting, agreed to speak with Plaintiff about her concerns; they

met two days later, and the Sheriff said that he was not going to discipline or dismiss Moracco.

(Dkt. Nos. 40-9, ¶¶ 35–36; 38-10, ¶ 4).

Plaintiff felt that Moracco's alleged discriminatory acts against another gay person "were a matter of public concern" that she should address with the Legislature.  (Dkt. No. 40-9, ¶ 37).  At another meeting on January 21, 2014, members of the public, including Plaintiff, discussed Moracco by name and voiced their opinions.  (Dkt. Nos. 40-8, ¶¶ 46–47; 40-9, ¶¶ 38–40).  At a meeting on February 18, 2014, Plaintiff again raised concerns about Moracco and read a statement by the LGBTQ Action Team of the First Unitarian Society of Ithaca.  (Dkt. No. 40-9, ¶ 43).  Plaintiff states that Defendant Lane, the Chair, interrupted Plaintiff, but she continued reading and completed her statement.  (*Id.*, at ¶¶ 43–44).  Plaintiff alleges that two others at the meeting also spoke about Moracco.  (Dkt. No. 40-9, ¶¶ 45–50).

Plaintiff spoke at several meetings in 2015 and at least two meetings in 2016 to raise various concerns about the Tompkins County Sheriff's Department, her apprehension about interacting with the police, and her belief that Chair Lane was "discriminating against her, female legislators, and other gay people during public comment."  (Dkt. Nos. 40-8, ¶¶ 66–68; 40-9, ¶¶ 59–61; 47-1, ¶¶ 66–68).  The Public Safety Committee did not use the blue cards for public comment in 2014; Defendant John alleges that the Committee began to employ them by 2017 because of the "many members of the public who wished to speak at the meetings."  (Dkt. Nos. 38-10, ¶ 2; 38-7, ¶ 7).

### D.  May 18, 2017 Public Safety Meeting

On May 18, 2017, the Public Safety Committee held a meeting which Plaintiff attended.  (Dkt. Nos. 38-4, ¶ 16; 40-9, ¶¶ 62–63).  The meeting was recorded via audio.  (*See* Dkt. No. 32, Ex. 1).  Defendant John, the Public Safety Committee Chair, opened the floor for public comment after explaining the Rules for Speaking under Privilege of the Floor and directing potential speakers to sign a blue card.  (Dkt. Nos. 32, Exs. 1, 2; 38-7, ¶ 9).  When Plaintiff began

to speak, Chair John asked whether she had signed a blue card, and Plaintiff answered no.  (Dkt. Nos. 32, Exs. 1, 2; 38-7, ¶¶ 9–10; 40-8, ¶ 85).  When Chair John instructed Plaintiff to submit a blue card, she refused.  (Dkt. Nos. 32, Exs. 1, 2; 38-7, ¶¶ 9–10; 40-8, ¶¶ 87–88).  Chair John then reiterated that Plaintiff needed to sign a blue card in order to speak, saying: "we're going to follow the rules" and "I know at the last meeting you went over your time and spoke about personnel issues . . . we can't have it."  (Dkt. Nos. 32, Exs. 1, 2).  Plaintiff responded: "I'm going to use my free speech to say whatever I'd like to and if you're going to arrest me, go ahead."  (*Id.*).  Chair John assured Plaintiff that he did not want to arrest her and stated "I'd like to give you a chance to speak but we all have to follow rules, and I can't just have people just getting up in the middle of the meeting and speaking whenever they want about whatever they want."  (*Id.*).

Plaintiff argued that the meeting was the public's "chance to come and tell you how we feel about public safety."  (Dkt. No. 32, Exs. 1, 2).  Chair John agreed and stated, "I am giving you the privilege to speak to this committee if you follow the rules of the meeting."  (*Id.*).  Plaintiff stated she was not going to sign the blue card, and Chair John responded that she could not speak.  (*Id.*)*.*  Chair John said, "If you don't wish to follow the rules, no you cannot speak.  That's my ruling as the Chair of the committee."  (*Id.*).  Plaintiff continued to debate her right to speak with Chair John, and then she began to read a prepared statement, saying: "In 2010, this Committee . . . ."  (*Id.*).  Before she could go further, Chair John interrupted and asked Plaintiff to leave; Plaintiff refused and continued to debate, and Chair John then asked officers present to escort Plaintiff out of the meeting.  (*Id.*).  At that point, Plaintiff continued her statement and began to speak about alleged "homophobia in the Sheriff's Department," but before she could finish, the meeting was adjourned.  (*Id.*).

### E.  October 30, 2017 Public Hearing

On October 30, 2017, the Legislature held a public hearing for Tompkins County's proposed budget for 2018.  (Dkt. No. 50-1, ¶ 3).  Shortly before the hearing, Karen Baer, the Director of the County's Office of Human Rights, was placed on administrative leave pending termination.  (*Id.*, at ¶ 4).  At the hearing, several members of the public commented about the importance of the Office of Human Rights and spoke about Baer.  (Dkt. Nos. 48-1; ¶¶ 16–21; 50-1, pp. 2–6).[3]

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256

---

[3] Plaintiff alleges that at a Legislature meeting on October 17, 2017 Defendant Lane stated that Baer "had been asked to leave her position and that she had been placed on administrative leave."  (Dkt. No. 48-1, ¶ 15).  However, Plaintiff has not alleged firsthand knowledge of this meeting, or submitted the minutes, a recording, or any admissible evidence supporting her allegation.  Therefore, the Court has not considered the alleged statement by Defendant Lane.

(2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotations and citations omitted).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Upon cross motions for summary judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the nonmoving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621–22 (2d Cir. 2008) (quoting *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007)).

## IV.    DISCUSSION

Plaintiff's remaining claims are as follows: 1) alleged violation of her First Amendment right to free speech when Defendants prevented her from speaking at the May 18, 2017 Public Safety Committee meeting; 2) alleged retaliation involving the same conduct by Defendants at the May 18, 2017 meeting; 3) alleged violation of her First Amendment right to free speech due to the Blue Card Rules prohibiting discussion of personnel matters and libelous/slanderous language; and 4) a related conspiracy claim.  (Dkt. No. 32).

In moving for summary judgment, Defendants argue that: 1) their actions at the May 18, 2017 meeting did not violate Plaintiff's First Amendment rights; 2) the County's Blue Card Rules are viewpoint neutral, reasonable, and constitutional; and 3) Plaintiff's conspiracy claim is baseless and unsubstantiated.  (*See generally* Dkt. No. 38-1).  On the other hand, Plaintiff seeks summary judgment on her First Amendment and conspiracy claims and renews her motion for a preliminary injunction.  (Dkt. No. 40-10).  Plaintiff argues that: 1) Defendants violated her First Amendment rights at the May 18, 2017 meeting; 2) the Blue Card Rules are overbroad, not viewpoint neutral, and unconstitutional; and 3) Defendants conspired to violate her rights.  (*Id.*, at pp. 5, 14–26).

### A.  Claims Related to the May 18, 2017 Meeting

First, Plaintiff claims that Defendants violated her First Amendment rights when they prevented her from speaking at the Public Safety Committee meeting on May 18, 2017.  (Dkt. No. 32).  Plaintiff also alleges that Defendants' actions at that meeting constituted retaliation for her speech at earlier meetings.  (*Id.*).

### 1.  Applicable Law

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  At its core, "the

First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). But "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Restrictions on constitutionally protected speech must pass the level of appropriate scrutiny, which depends on the nature of the forum in which the speech occurs. *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. 2012). This Court previously found, and both parties agree, that the Legislature meetings in question should be categorized as a limited public forum. (Dkt. Nos. 16, p. 13-14; 38-1, p. 6; 40-10, p. 14).

In a limited public forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009). A rule is viewpoint neutral if it is "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry." *Turner Broadcasting Systems. Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994). Thus, an important inquiry "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys" or whether the regulation serves neutral purposes, unrelated to the message, "even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Furthermore, once a government entity has allowed speech on a certain subject in a limited forum, it may not selectively deny other speech on that subject. *See Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545–46 (2d Cir. 2002). Strict scrutiny is accorded to restrictions on speech that fall within the designated subject(s) for which the forum has been opened. *Id.*, at 545.

"To establish a case of retaliation in violation of the First Amendment, a plaintiff must demonstrate that: (1) [s]he engaged in protected conduct; (2) the defendant took adverse action against [her]; and (3) there was a causal connection between the two." *Linares v. McLaughlin*, 423 F. App'x 84, 86 (2d Cir. 2011); *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Monroe*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." (*Id.*) (quoting *Hartman*, 547 U.S. at 260).

### 2. Analysis

This Court previously granted Defendants' motion to dismiss Plaintiff's First Amendment claims based on the Blue Card Rules "other than the prohibitions on speaking about personnel matters of non-elected County employees and using slanderous or libelous language." (Dkt. No. 16, p. 20). Importantly, the Court found that the Rules (excepting the two mentioned) applied to all speakers regardless of viewpoint and were reasonably "tailored to serve the County's significant interest in conducting the public comment portions of its legislative meetings in an orderly and effective fashion." (*Id.*, at p. 19). The Court also found that the Rules "do not amount to unconstitutional prior restraints because they do not give Defendants the power or discretion to deny the use of the forum in advance of the actual expression." (*Id.*, at pp. 21–22). These findings remain the law of the case. Therefore, Plaintiff's argument that the Blue Card itself amounts to an unconstitutional prior restraint must fail.

The same is true for Plaintiff's argument that her rights were violated by the rule requiring her to sign in.  That requirement is constitutional because it is: 1) viewpoint neutral in that it does not ask speakers to disclose any particular viewpoint; and 2) reasonable in terms of organizing and orienting public comments to the Legislature.  (Dkt. Nos. 38-2, ¶ 3; 38-4, ¶ 4; 38-6, ¶ 3; 38-7, ¶ 7).  *See Madden v. Town of Hempstead*, No. 16-CV-6835, 2019 WL 1439935, at *15, 2019 U.S. Dist. LEXIS 56581, at *45 (E.D.N.Y. Mar. 29, 2019) ("[T]he Town clearly had a significant interest in conducting its meeting in an orderly and effective fashion") (internal quotation marks and citations omitted); *Brenchley v. Vill. of Phoenix*, No. 5:01-CV-0190, 2005 WL 2437027, at *4, 2005 U.S. Dist. LEXIS 48212, at *11 (N.D.N.Y. Sept. 30, 2005) ("It is settled law that the Village had a significant interest in conducting its meeting in an orderly and effective fashion . . . .") (internal quotation marks and citation omitted); *see also Komatsu v. City of New York*, No. 20-CV-7046, 2021 WL 256956, at *2, U.S. Dist. LEXIS 14522 at *4–5 (S.D.N.Y. Jan. 26, 2021) (finding that City Council acted reasonably in refusing to let the plaintiff speak at meeting where he did not properly sign in).

Nonetheless, Plaintiff argues that Defendants' enforcement of the Blue Card Rules at the May 18, 2017 meeting was specifically intended to silence her views about personnel matters. (Dkt. Nos.  32, ¶ 97; 40-10, pp. 19, 21).  However, the Court has reviewed the audio recording of the meeting, and Plaintiff did not speak about personnel matters *before* the Chair asked her to sign in and follow the Blue Card Rules.  The Chair never inquired as to the substance of Plaintiff's comments, and the three Public Safety Committee members in this action who attended the May 2017 meeting have stated that they did not know the content of Plaintiff's intended speech.  (Dkt. Nos. 38-7, ¶ 12; 38-8, ¶ 5; 38-9, ¶ 5; 40-9, ¶ 81).

The Chair did mention that at the last meeting Plaintiff attended she went over the three-minute time limit and spoke about personnel issues, and the Chair said that we "can't have it." This does not suggest that Defendants knew what Plaintiff wanted to speak about, but rather that she had a history of not following the rules.  The Chair stated clearly, "If you don't wish to follow the rules, no you cannot speak.  That's my ruling as the Chair of the committee."  Thus, the Committee enforced the rules before Plaintiff began any substantive comments.[4]  In addition, the record shows that Plaintiff had not spoken about personnel matters at Legislature meetings since 2014 (the Moracco affair), more than two years before the meeting in question.  Plaintiff admits that she did not speak with any committee members before the May 2017 meeting and that she frequently spoke on many issues at Legislature meetings, so the committee members had no reason to know the subject of her intended speech.  (Dkt. No. 40-4, p. 18).  And there is no evidence whatsoever that the Legislature permitted other members of the public to speak at meetings without signing the Blue Card.[5]

Based on these facts, no reasonable jury could find that Defendants' enforcement of the Blue Card sign-in requirement at the May 2017 meeting was motivated by the content of Plaintiff's speech.  Rather, Plaintiff's refusal to sign in (a reasonable and viewpoint neutral rule) prompted the Chair's ruling that she could not speak and request for her to leave the meeting.

---

[4] The audio recording of the meeting shows that Plaintiff only spoke about personnel matters *after* the Chair ruled that she could not speak without signing in and asked her to leave.  (Dkt. No. 32, Ex. 1). Furthermore, to the extent Plaintiff alleges that before the meeting she heard Defendant John speak about not letting her speak because she would "cause problems," (Dkt. No. 40-9, ¶ 76), that comment did not refer to the *content* of her speech, and Defendant John clearly said he would allow her to speak if she signed in first.

[5] At various points in this case Plaintiff alleged that other members of the public were allowed to comment in violation of the Blue Card Rules; these allegations were later corrected to resolve inaccuracies and because some of Plaintiff's allegations did not occur.  (Dkt. No. 48-1, ¶¶ 5–12).

(Dkt. No. 32, Ex. 1).  Accordingly, Plaintiff's First Amendment claim that she was deprived of free speech at the May 2017 meeting must be dismissed.  *See Madden*, 2019 WL 1439935, at *14–15, 2019 U.S. Dist. LEXIS, at *44 (dismissing the plaintiff's First Amendment claim where "[t]he record is bereft of any evidence from which a rational jury may reasonably find that [defendants] . . . refused to let plaintiff speak at the meeting because of the content of her anticipated speech. . . ."); *Ostrom v. O'Hare*, 160 F. Supp. 2d 486, 498 (E.D.N.Y. 2001) (dismissing the plaintiff's First Amendment claim where the plaintiff submitted  "no evidence that the Finance Board was aware of, much less considered, her political positions in deciding her application," and that "the speculation that such considerations might have come into play in the present case does not support a cause of action")*.*

Plaintiff's First Amendment retaliation claim fails for many of the same reasons. Plaintiff alleges that Defendants' use of the sign-in rule was a "subterfuge" for retaliation against her for publicly criticizing Moracco.  (Dkt. No. 32, ¶ 96).  Assuming *arguendo* that Plaintiff's comments about Moracco in 2014 were protected activity and that Defendants took an adverse action against her at the May 2017 meeting, these two events are too far attenuated to reasonably infer a causal connection between them.  Moreover, even if the Chair's remark about Plaintiff's past comments could be read to infer a retaliatory motive, no reasonable jury could conclude that retaliation was the but-for cause of Defendants' actions rather than Plaintiff's failure to sign in. In other words, because the sign-in requirement was reasonable and consistently applied as a prerequisite for speaking, Plaintiff cannot show that the alleged adverse action against her would not have been taken absent a retaliatory motive.  *See Nieves*, 139 S. Ct. at 1722.

Accordingly, Plaintiff's First Amendment retaliation claim based on the May 2017 meeting must be dismissed.  *See also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274

(2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."); *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1820 (2017) ("This gap of some sixteen months is too long to support a retaliation claim based solely on temporal connection."); *Frisenda v. Inc. Village of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) ("courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation") (collecting cases).

### B. Claims related to Blue Card Prohibitions for Personnel Matters and Slanderous/Libelous Language

Next, Plaintiff claims that the Blue Card prohibitions against discussion of personnel matters and slanderous/libelous language are unconstitutional because they are not viewpoint neutral, as well as being vague and overbroad.  (Dkt. No. 32).  The Court will examine each rule separately, for "[a]lthough Plaintiff attempts to combine the prohibition[s] . . . to argue that the personnel matters prohibition is content based, the Rules address these two prohibitions in separate paragraphs.  A reading of the plain text of the Rules indicates that they are separate regulations . . . ."  (Dkt. No. 16, p. 16).

#### 1. Personnel Matters Rule

The Court previously found that the prohibition against discussing personnel matters is viewpoint "neutral in that it prohibits both positive and negative comments about County personnel matters related to particularly identified, non-elected, County employees."  (Dkt. No. 16, p. 16).  However, the Court could not examine Defendants' cited reasons for the prohibition at the motion to dismiss stage.  (*Id.*, at p. 18).  Now on summary judgment, Defendants argue that the prohibition against discussing personnel matters is reasonable, pointing to evidence that the Legislature does not oversee county employees, participate in personnel decisions, and

15

personnel issues are outside of its function.  (Dkt. Nos. 38-6, ¶ 5; 38-7, ¶ 5).  County personnel matters, as described by Defendants Lane and John, include an employee's job performance and "hiring, firing, demotion and promotion."  (Dkt. Nos. 38-6, ¶¶ 4–5; 38-7, ¶¶ 4–5).  The prohibition does not bar "passing references" to employees.  (*Id.*).  The Rules also describe an alternative outlet where members of the public can direct comments about personnel.  (Dkt. No. 38-4, Ex. B).

Based on this evidence, the Court finds that the prohibition is reasonable in serving the purpose of allowing the Legislature to ensure order at meetings and to focus on the business of the Legislature, which does not include personnel decisions.  (Dkt. Nos. 38-6, ¶¶ 4–5; 38-7, ¶¶ 4–5).  Plaintiff argues, however, that the Legislature has allowed discussion of personnel matters and thus opened the forum to such comments.  (Dkt. Nos. 40-10, p. 15; 48-4, p. 7).  Plaintiff points to evidence including a public hearing on October 30, 2017 where people commented about the job performance of non-elected county employee Karen Baer.  (Dkt. Nos. 48-1, ¶¶ 16–21; 50-1, ¶¶ 3–4, Ex. A).

As discussed above, once a government entity has allowed expressive activities of a certain genre, it may not selectively deny other speech of that genre.  *Hotel Emples. & Rest. Emples. Union, Local*, 311 F.3d at 545.  Viewing the evidence in the light most favorable to Plaintiff, the comments about Baer could be seen as opening the door for discussion about personnel matters.  But Plaintiff's claim still falls short because Defendants did not selectively deny her speech on that subject.  Indeed, at the May 18, 2017 meeting, the Chair ruled that Plaintiff could not speak without signing in and asked her to leave before she made any comments about personnel matters.  Therefore, Plaintiff's claim must fail.  *Cf. Pesek v. City of Brunswick*, 794 F. Supp. 768, 785 (N.D. Ohio 1992) (finding that the plaintiff was deprived of

his First Amendment right to free speech when the defendant City Council selectively denied him the right to speak at a meeting, where they knew what he intended to speak about and permitted others to speak on that subject).

As to Plaintiff's argument about vagueness and overbreadth, the Court must determine whether the prohibition against personnel matters reaches "a substantial amount of constitutionally protected conduct" and if not, then whether the prohibition is "impermissibly vague." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982); *see also United States v. Requena*, 980 F.3d 29, 40 (2d Cir. 2020) (holding that "a statute may be void for vagueness even though 'some conduct . . . clearly falls within the provision's grasp'") (citing *Johnson v. United States*, 576 U.S. 591, 602 (2015); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 n.3 (2018)).  Vagueness generally means a law "fails to define the unlawful conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited, or if its vagueness makes the law unacceptably vulnerable to arbitrary enforcement." *Requena*, 980 F.3d at 39 (citation omitted).

Here, the prohibition against discussing personnel matters is reasonable and viewpoint neutral, and therefore it does not reach a substantial amount of constitutionally protected conduct. *See Hoffman Estates*, 455 U.S. at 494.  Moreover, the prohibition explicitly defines "personnel matters" as relating to a non-elected employee's job performance.  Ordinary people can reasonably understand that this rule prohibits discussion about how well or poorly an employee accomplishes his or her job responsibilities.  Enforcement is similarly straightforward because the prohibition does not bar mere mention of an employee, only discussion of an employee's job performance or employment decisions related to an employee.  Accordingly, the

Court finds that the prohibition on personnel matters is not impermissibly vague and overbroad. In sum, Plaintiff's claims related to the personnel matters prohibition must be dismissed.

### 2. Libel and Slander Rule

Next, Defendants argue that the prohibition against using libelous and slanderous language is reasonable, and further, that it had no effect on Plaintiff. (Dkt. No. 38-1, p. 11). Plaintiff argues that the prohibition serves no compelling interest and is overbroad. (Dkt. No. 40-10, p. 18).

Arguably, this prohibition could be subject to strict scrutiny because it touches on the content of speech, i.e. comments that are "false, made with knowledge of [their] falsity or reckless disregard for [their] truth." (Dkt. No. 38-7, ¶ 6). Assuming that is the case, the prohibition must be supported by a compelling government interest. But this bar is easily met. Today more than ever, false comments are deleterious to public discourse and the function of government. According to Defendant John, "such comments contribute nothing to the legislative process and provide no public benefit." (*Id.*). A prohibition against libel and slander is important because it focuses public commentary on truthful facts that can benefit the work of the Legislature. Because Defendants have demonstrated a compelling interest for the prohibition, this portion of Plaintiff's claim must fail. *See also Ballard v. Patrick*, 163 F. App'x 584, 584–85 (9th Cir. 2006) (affirming dismissal of First Amendment challenge to meeting rule that reasonably prohibited "profane, abusive, or slanderous speech during the public comment portion of Board meetings"); *Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1372 (D. Kansas 1998) (finding that rule against personal, rude or slanderous remarks is reasonable content neutral restriction because it is "does not target the expressive content of the message itself" and serves the significant governmental interest of having orderly meetings).

Next, Plaintiff argues that the prohibition against libelous and slanderous language is unconstitutionally vague.[6]  This prohibition bars speakers from using "slanderous or libelous language or speak[ing] or act[ing] in a manner that would tend to incite a breach of the peace." (Dkt. No. 38-4, ¶ 6, Ex. B).  According to Defendant John, "[s]landerous and libelous language is language that is false, made with knowledge of its falsity or reckless disregard for its truth." (Dkt. No. 38-7, ¶ 6).  Although the Blue Card does not expressly define libel and slander, these terms are common enough to be understood by ordinary citizens, with the touchstone being a knowing, false statement.  In sum, the prohibition against libelous and slanderous language is not impermissibly vague, and Plaintiff's related claims must fail.  *See also Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1175 (D.N.M. 2014) (rejecting vagueness challenge to "negative mention" rule where it provided "an intelligible benchmark regarding how to conduct oneself when speaking during the public input portion of the Governing Body meetings").

## C.  Conspiracy

Further, Plaintiff alleges that Defendants conspired to silence Plaintiff and retaliate against her at the May 2017 meeting.  (Dkt. No. 32, ¶ 103).  Defendants argue that Plaintiff has failed to adduce evidence supporting a conspiracy claim.  (Dkt. No. 38-1, pp. 13–15).

In general, a conspiracy claim pursuant to 42 U.S.C. requires "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Here, Plaintiff has failed to show evidence to permit a reasonable inference that Defendants came to a meeting of minds to deprive Plaintiff of her First Amendment rights at the

---

[6] The First Amended Complaint does not allege overbreadth, and therefore the Court will not consider this argument.  (*See* Dkt. No. 16, p. 20).

May 2017 meeting.  The record shows that when Plaintiff failed to sign in and continued speaking, Defendant John asked her to sign in, stop speaking, asked her to leave, requested her removal, and finally moved to adjourn.  (Dkt. No. 21, Exs. 1, 2).  There is no evidence that Defendants discussed the matter beforehand and/or came to an agreement to deprive Plaintiff of her constitutional rights.  Moreover, Plaintiff has failed to raise an issue of fact that she suffered a constitutional injury in the first place, as discussed above.

Therefore, Plaintiff's conspiracy claim must be dismissed.  *See also Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (finding claims that defendants worked together insufficient to suggest an improper motive); *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 154 (2d Cir. 2006) (finding that the fact that government employees from various federal and state agencies cooperated does not, without more, prove they conspired to violate the plaintiff's rights); *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails.").

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 40) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 38) is **GRANTED**; and it is further

**ORDERED** that the First Amended Complaint (Dkt. No. 32) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to

the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date:   March 15, 2021
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge